UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA KLEINKNECHT,

    Plaintiff,

    v.

TRILOGY HEALTHCARE OF LAPEER, LLC,
ET AL.,

    Defendants.

Case No. 19-cv-11065

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#27]; AND (2) GRANTING IN PART DEFENDANTS' RENEWED MOTION TO COMPEL [#38]

On March 18, 2019, Plaintiff Brenda Kleinknecht ("Plaintiff") filed a complaint in Lapeer County Circuit Court against her former employer, Trilogy Healthcare of Lapeer, LLC ("Trilogy") and Trilogy Management ("Trilogy Healthcare") (together, "Defendants"). *See* ECF No. 1-1. On April 12, 2019, Defendant Trilogy Healthcare timely removed this matter to this Court. ECF No. 1. In her Complaint, Plaintiff alleges that she was subject to harassment and retaliation based on her disability, in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

1

Presently before the Court is Defendants' Motion for Summary Judgment, filed on June 1, 2020.   ECF No. 27.   Defendants' Motion is fully briefed. Defendants' Renewed Motion to Compel Supplemental Responses to Defendants' First Set of Interrogatories and Requests for Production of Documents, Responses to Defendants' Second Set of Requests for Production of Documents, and for Sanctions (hereinafter, "Renewed Motion to Compel"), filed on July 29, 2020, is also before the Court.  ECF No. 38.  This Motion is also fully briefed.  A hearing on both motions was held on September 10, 2020.  For the reasons that follow, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' Motion for Summary Judgment [#27].  Further, the Court will **GRANT IN PART** Defendants' Renewed Motion to Compel [#38].

## II. FACTUAL BACKGROUND

### A. Plaintiff's Employment

Plaintiff began working for Defendant Trilogy in February 2017 as a Certified Nurse's Assistant ("CNA") in the Lapeer County location.  ECF No. 1-1, PageID.12. At the time Plaintiff was hired, she was placed on a four-day workweek in eight-hour shifts (plus additional overtime) and was assigned a specific hall for her shifts. ECF No. 27, PageID.239.   Plaintiff contends that at her hiring interview, she informed the director of nursing that she is diabetic.  ECF No. 32, PageID.610. Additionally, Plaintiff asserts that she suffers from a number of chronic ailments,

including diabetes, kidney disease, high blood pressure, high cholesterol, and arthritis. *Id.*

### B. Plaintiff's Requests to Change Work Location

Plaintiff asserts that she informed Defendants that she required accommodations in her working schedule in order to monitor her diabetes. ECF No. 1-1, PageID.13. Defendant Trilogy's Stonegate Health Campus, the location at which Plaintiff was employed, is divided into four main areas, including three halls. ECF No. 27, PageID.239. "300 hall" consists of the heaviest load of patients, and "100 hall" consists of the fewest number of patients. *Id.*

In April 2017, Defendants assigned Plaintiff to a hall that did not allow her to take the breaks that she needed in order to monitor her health. ECF No. 1-1, PageID.13. She therefore requested that she be moved from "300 hall" to "200 hall." ECF No. 27, PageID.239. Plaintiff allegedly informed then-Director of Nursing Kim Miller that she was not timely receiving her breaks while working in "300 hall," which caused her to pass out when she got home from work. *Id.* at PageID.240. Plaintiff's request was granted approximately one or two days later. *Id.* The following month, Plaintiff purportedly orally requested that she be moved from "200 hall" to "100 hall," a request which was also granted. ECF No. 34-2, PageID.987. Plaintiff testified that "100 hall" has a lighter patient load, and that it thus allowed her to take her requisite breaks. *Id.* at PageID.986.

### C. Defendants Transition Full-Time Employees to Five-day Policy

On December 7, 2017, Defendants implemented a new policy requiring employees to work either a five-day (full-time) or a three-day (part-time) workweek. ECF No. 27, PageID.235.  At a staff meeting, Defendants informed employees that anyone who could not meet the five-day full-time requirement would be dropped to part-time status.  ECF No. 32, PageID.611.  Plaintiff asserts that she told her supervisors during this meeting that she would be unable to work a five-day schedule and that she requested an exception to keep her at four days, which was allegedly denied.  *Id.*  On December 19, 2017, Plaintiff purportedly called Defendants' corporate hotline with concerns about the five-day workweek policy, resulting in an investigation where no wrongdoing was found.  ECF No. 27, PageID.245.

On December 23, 2017, Plaintiff submitted two items: a handwritten note, and a doctor's note.[1]  The signed, handwritten note stated, "I will not be able to work 5 day work weeks effective immediately, as well as 4 consecutive days."  ECF No.32-8, PageID.859.  The doctor's note asserted that Plaintiff has a diabetic condition and that Plaintiff thus needed to monitor her condition to prevent any future complications.  *Id.* at PageID.861.  Sometime between January 4 and 10, 2018, Plaintiff submitted a second doctor's note stating, "[i]f [Plaintiff] were able to work

---

[1] Between December 7, 2017, the date of Defendants' policy announcement, and December 23, 2017, the date of Plaintiff's doctor's note, Plaintiff did not work a five-day workweek.  ECF No. 27, PageID.235.

4 days as opposed to 5 days per week, she may be able to better meet the self-care requirements as listed above while wearing an insulin pump." *Id.* at PageID.878.

On January 2, 2018, Plaintiff contacted her location's scheduler to inquire about an accommodation. ECF No. 1-1, PageID.14. The scheduler advised Plaintiff that the only available accommodation was for her to work alternate weeks of five-day and four-day work weeks. *Id.* Defendants would also require Plaintiff to be on call the fourth week of each month. *Id.* Plaintiff informed Defendants that she would be unable to work those hours because of her diabetes. *Id.* at PageID.15.

### D. Plaintiff Files Charges With the EEOC

On January 9, 2018, Plaintiff filed a Charge with the EEOC, alleging that she submitted a request for an accommodation, which was eventually denied, "on or about December 26, 2017," for her "work schedule be modified to part-time status; work 4 day[s] a week 8 hours per day." ECF No. 27, PageID.245. Defendants allege that the Charge was not sent to them until January 11, 2018. *Id.* Plaintiff purports Defendants became aware of the Charge "no later than January." ECF No. 32, PageID.626. On August 9, 2018, the EEOC dismissed Plaintiff's Charge.[2] ECF No. 27, PageID.246.

---

[2] On May 7, 2018, Plaintiff filed a second charge with the EEOC, alleging that her termination was the result of retaliation. ECF No. 27, PageID.246. That Charge was dismissed on August 23, 2018. *Id.* Plaintiff did not bring a lawsuit within 90 days of receiving either dismissal, thus preventing her from asserting any claims under the Americans with Disabilities Act ("ADA"). *Id.* Plaintiff claims she filed

### E. Plaintiff's Final Months of Employment at Trilogy

During the final two months of her employment, Plaintiff received written warnings for her workplace conduct.  ECF No. 27, PageID.245–46.  On February 27, 2018, Nursing Manager Elizabeth "Liz" Lowe investigated two patient concerns involving Plaintiff.  *Id.* at PageID.243.  One patient allegedly complained Plaintiff was rude when giving her a shower, and another patient purportedly complained that she had not been in her room and did not give her oxygen or her meal.  ECF No. 34-2, PageID.1002.  On March 12, 2018, Defendants issued a "final written warning" to Plaintiff, alleging failure to follow policies and procedures regarding a "positive attitude," as well as failures to follow directives concerning resident investigations.  ECF No. 32, PageID.615.

On March 22, 2018, Plaintiff picked up a shift for a fellow Certified Resident Care Associate ("CRCA"), Lynne Charbeneau.  ECF No. 27, PageID.237.  Although Charbeneau was scheduled to work on the "300 hall," Plaintiff allegedly altered the schedule without receiving approval to reflect that she would be working on the "100 hall."  *Id.* According to Plaintiff, she was never disciplined for switching shifts with Charbeneau.  ECF No. 32, PageID.618.  Defendants allege it is against their policy

---

two claims with the MDCR and EEOC: one for failure to accommodate and for discrimination in violation of the ADA and PDCRA, filed in January of 2018, and the other for retaliation, filed shortly after Plaintiff was fired in April of 2018.  ECF No. 32, PageID.608.

and procedure to change the schedule without approval.  ECF No. 27, PageID.237.
Plaintiff provided a text message from Ann Green, who was responsible for
Plaintiff's schedule at the time, approving the schedule change so long as a form was
completed.  ECF No. 32, PageID.618.  However, Green testified that she could not
recall if a form was filled out.  *Id.*

On April 2, 2018, Defendants terminated Plaintiff.  ECF No. 1-1, PageID.12.

## F. Defendants' Present Motions

There are two motions presently before the Court.  First, Defendants move for
summary judgement on Plaintiff's disability discrimination and retaliation claims.
ECF No. 27, PageID.222.  Defendants assert that Plaintiff has failed to make a prima
facie case under the PWDCRA.  *Id.* at PageID.247.  Defendants present two
arguments in support of their present Motion: (1) Plaintiff's disability discrimination
claim should be dismissed because Plaintiff is not disabled, qualified for her
position, or that Defendants' reasons for any discipline or her termination were
pretextual; and (2) Plaintiff cannot establish a retaliation claim because she cannot
identify any decision-maker who was aware of her complaints, or that Defendants'
reasons for any discipline or her termination were pretextual.

Plaintiff opposed Defendants' Motion for Summary Judgment on June 22,
2020, arguing that there is evidence of biased co-worker/supervisor statements,
heightened scrutiny, disparate treatment, fabrication and illusory investigation.  ECF

No. 32, PageID.631.  Plaintiff thus asserts that summary judgment is not warranted at this stage. *Id.*  Defendants filed their Reply on July 7, 2020.  ECF No. 37.

Second, Defendants filed a Renewed Motion to Compel on July 29, 2020. ECF No. 38.  In this Motion, Defendants move the Court for an Order compelling information and documents from Plaintiff, the payment of costs and fees incurred in bringing this Motion, and sanctions, pursuant to Federal Rule of Civil Procedure 37. Plaintiff filed a Response on August 12, 2020.  ECF No. 39.  In her Response, Plaintiff asserts that the "only issue for this Court to resolve by way of evidentiary hearing is whether or not the tardy responses by Plaintiff to Defendants' requests related to handwritten notes violated the court order, and whether that violation was wilful [*sic*]."  *Id.* at PageID.1479–80.  Magistrate Judge David R. Grand previously granted Defendants' first Motion to Compel (ECF No. 29) on July 1, 2020.  *See* ECF No. 36.  Defendants filed a Reply to their Renewed Motion to Compel on August 18, 2020.  ECF No. 40.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a

matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## B. Analysis

In her Complaint, Plaintiff alleges Defendants violated the PWDCRA by discriminating against her and retaliated against her on the basis of her disability. Like the Americans with Disabilities Act, the PWDCRA prohibits an employer from discharging or otherwise discriminating against an employee because of her disability, Mich. Comp. Laws § 37.1201(d)(1)(b). Moreover, it imposes a duty on the employer to accommodate an individual's disability absent undue hardship on the employer. *Id.*; *see also Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004).

Defendants argue that summary judgment is appropriate for Plaintiff's disability discrimination and retaliation claims. The Court shall address each claim in turn.

### 1.  Discrimination Claim

#### a.  Standard under the PWDCRA

The plaintiff bears the burden of proving a violation of the PWDCRA.  *See Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004).  In order to establish a prima facie case of disability discrimination, the plaintiff must demonstrate that (1) she is disabled as defined in the act; (2) the disability is unrelated to her ability to perform her job duties; and (3) she has been discriminated against in one of the ways delineated in the statute.  *Id.*  Once the plaintiff has established that she is a "qualified person with a disability" protected by the PWDCRA, she must next demonstrate that she has been discriminated against in one of the ways set forth in MCL § 37.1202.  Like the ADA, the PWDCRA prohibits employers from taking any of a variety of measures that adversely affect protected individuals.  *Id.* at 864.  If the plaintiff sets forth a prima facie case, the burden then shifts to the defendant(s) to rebut the presented evidence.  *Id.* (citation omitted).

#### b.  Disability

##### i.  Whether Plaintiff Qualifies as Disabled under the PWDCRA

"[T]he PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job."  *Down v. Ann*

*Arbor Public Schools*, No. 14-10086, 2015 WL 5655866, at *5 (E.D. Mich. Sept. 2015) (quoting *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004)).  Not every impairment rises to the level of a disability under the PWDCRA.  *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 406 (Mich. Ct. App. 1999).  The PWDCRA defines disability, in pertinent part, as follows:

> (i) A determinable physical or mental characteristic of an individual which may result from disease, injury, congenital conditions of birth, or functional disorder, if the characteristic: (A) ... substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

MCL § 37.1103(d)(i)(A).

Michigan has adopted a three-pronged test to determine whether a plaintiff has a disability under the PWDCRA.  *Down*, 2015 WL 5655866, at *5; *see also Chiles*, 606 N.W.2d at 406.  First, the court considers whether the plaintiff has a physical impairment.  *Chiles*, 606 N.W.2d at 406.  Next, the court identifies the life activity that the plaintiff is relying upon and determines whether it is a major life activity.  *Id.*  Finally, the court asks whether the plaintiff's physical impairment "substantially limited the major life activity."  *Id.* (citation and quotation omitted).  Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  *Stevens v. Inland*

*Waters, Inc.,* 559 N.W.2d 61, 64 (Mich. Ct. App. 1996) (quoting 29 C.F.R. § 1630.2(i)). To determine whether an impairment substantially limits a major life activity, this Court is guided by the following factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or expected permanent or long-term effect of the impairment. *Miller v. Mich. State Police,* No. 331406, 2017 WL 3043972, at *4 (Mich. Ct. App. July 18, 2017) (citation omitted).

Here, Plaintiff argues that her diabetes interfered with her ability to work. ECF No. 32, PageID.623. She cites to a text message exchange with a nursing manager as support for her assertion that her diabetes interfered with such an activity. *Id.* Defendants argue that Plaintiff cannot establish that her diabetes condition "causes her to be substantially limited in any major life activity." ECF No. 27, PageID.248. In order to avoid summary judgement, the Court emphasizes that Plaintiff must show more than a physical impairment. As explained *supra*, Plaintiff must demonstrate that her diabetes "substantially limit[s] one or more major life activities" in order for her condition to qualify as a disability.

Plaintiff points to two doctor's notes to demonstrate that her blood sugar levels must be controlled and that her work may be impaired if she does not properly

monitor her condition.[3]   ECF No. 32-13, PageID.899; *see also* ECF No. 32-8, PageID.861, 878.  In her deposition, Plaintiff testified that a four-day workweek, as opposed to a five-day workweek, would better help her meet self-care requirements because she would have more energy.  ECF No. 34-2, PageID.993.  Moreover, she explained that she would feel worn out and exhausted, and that she could not do anything else after work or on her free time.  *Id.*

Defendants argue that Plaintiff cannot establish that her diabetes causes her to be substantially limited in any major life activity.  ECF No. 27, PageID.248.  The Court agrees.  The record only suggests that if Plaintiff were able to work four days as opposed to five days each week, she "*may* be able to better meet the self-care requirements" necessary to her diabetes condition.  ECF. No. 32-13, PageID.899 (emphasis added).  Such a schedule-specific job restriction is not sufficient to qualify as a substantial impairment on her ability to work.  *See Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir. 1996) (holding that an employer does not necessarily regard an employee as disabled "simply by finding the employee to be incapable of satisfying the singular demands of a particular job") (internal citation and quotation marks omitted); *Chiles v. Machine Shop, Inc.,* 606 N.W.2d 398, 407–08 (Mich. Ct. App. 1999) (holding that, under the PWDCRA, "the inability to

---

[3] At the hearing, Plaintiff conceded that the second doctor's note is more demonstrative of her alleged disability as defined by the PWDCRA than the first doctor's note.

perform a *particular* job does not constitute a substantial limitation. Instead, the impairment must significantly restrict an individual's ability to perform at least a wide range of jobs.") (citations omitted) (emphasis in original).

Defendants cite to several cases within the Sixth Circuit to support their argument that Plaintiff's condition is insufficient to qualify as a disability within the meaning of the PWDCRA.  For example, in *Mahon v. Crowell,* the Sixth Circuit explained that "any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation."  295 F.3d 585, 590–91 (6th Cir. 2002).  Similarly, in *Brady v. Potter,* the Sixth Circuit held that plaintiff's diabetes was not a disability because it did not "substantially limit[ ] one or more major life activities" where the plaintiff was capable of caring for herself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, had gone over a year without missing a single day of work, and was able to manage her condition with an insulin pump, diet, and managing her blood sugar through drinks and snacks.  273 F. App'x 498, 502–03 (6th Cir. 2008).

Here, the Court finds that Plaintiff similarly did not adequately plead that her diabetes substantially limited any major life activity.  The Court takes notice that Plaintiff received monthly attendance bonuses on four occasions, which were automatically awarded if an employee did not call off for the entire month.  ECF. No. 34-2, PageID.1018.  Moreover, the Court finds that, without more, Plaintiff's

testimony that she felt "worn out" and "exhausted" to the point that she was unable to "do anything else after work" or in her free time is not enough to establish Plaintiff has a disability under the PWDCRA.

### ii. Whether Defendants Regarded Plaintiff as Disabled under the PDCRA

Regardless of whether Plaintiff was actually disabled within the meaning of the PWDCRA, she can also demonstrate a disability if she can show that she is "regarded as having a determinable physical or mental characteristic." MCL § 37.1103(d)(iii). "[D]efendants could be found to have violated subsection 103(d) of the PWDCRA if [they] discriminated against [P]laintiff on the basis of a perceived disability." *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 406 (Mich. Ct. App. 1999). Plaintiff must still prove that Defendants perceived that she was actually "disabled" within the meaning of the PWDCRA. *Id.* (citation omitted). She must identify evidence that Defendants regarded her as having an impairment that substantially limited a major life activity. *Id.* "[S]howing that an employer thought that [she] was somehow impaired is not enough[.]" *Id.*

Here, Plaintiff asserts that "there is no dispute that Defendant *regarded* Plaintiff as disabled for purposes of the PDCRA [*sic*], given that Defendant Trilogy attempted to accommodate a request made under the statute." ECF No. 32, PageID.624 (emphasis in original). Defendants contest this argument in their Reply. *See* ECF No. 37, PageID.1306–07. To determine whether there is sufficient

evidence to establish that Defendants perceived Plaintiff as being disabled within the meaning of the PWDCRA, the Court again applies the three-step process utilized by the Michigan Court of Appeals in *Chiles*. First, the Court must determine whether the evidence establishes that Plaintiff's diabetes was a physical impairment. *Chiles*, 606 N.W.2d at 407. The parties do not appear to dispute that diabetes constitutes a physical impairment. The provided doctor's notes indicate that Plaintiff is diabetic. ECF No. 32-13, PageID.899; ECF No. 32-8, PageID.861, 878.

Second, the Court must determine whether Plaintiff identified a "major life activity" that was affected by her physical impairment. *Chiles*, 606 N.W.2d at 407. As discussed *supra*, the Court finds that Plaintiff did not adequately plead that her diabetes substantially limited any major life activity. *Brady v. Potter*, 273 F. App'x 498, 502–03 (6th Cir. 2008). Plaintiff's claim that Defendants regarded her as disabled is based on the contention that Defendants accommodated Plaintiff's requests. ECF No. 32, PageID.624. However, there is no evidence suggesting that any managerial-level employee believed Plaintiff's diabetes substantially limited her alleged major life activity of working. Indeed, Plaintiff does not cite to any evidence in the record to support her argument that Defendants regarded Plaintiff as disabled.[4]

---

[4] The Court takes notice that Plaintiff cites to a text message exchange with unit manager Liz Lowe for the proposition that Plaintiff's diabetes interfered with working. *See* ECF No. 32, PageID.623. In this exchange, Plaintiff informs Ms. Lowe that her sugar levels were "all over the place" and making her "feel awful."

*See id.*  While the Court recognizes Defendants' efforts to accommodate their employee's health concerns, this does not mean, for purposes of establishing a PWDCRA claim, that Defendants regarded her as disabled. *Plant v. Morton Intern.*, 212 F.3d 929, 938 (6th Cir. 2000) (rejecting plaintiff's contention that he was "regarded as" disabled within the meaning of the ADA by pointing to the portion of the record in which his supervisor admitted he was aware of his medical restrictions and decision to modify his responsibilities based on them).

In the final step, the Court must determine if Plaintiff establishes a genuine issue of material fact with respect to whether her diabetes "substantially" limited a major life activity.  *Chiles*, 606 N.W.2d at 408.  To reiterate, the Court is guided by the following factors to determine whether an impairment substantially limits a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or expected permanent or long-term effect of the impairment.  *Miller v. Mich. State Police,* No. 331406, 2017 WL 3043972, at *4 (Mich. Ct. App. July 18, 2017) (citation omitted).  In the preceding section, the Court concluded that Plaintiff did not adequately plead that her diabetes substantially limited any major life activity.  Plaintiff was able to demonstrate perfect attendance for several months.  *See* ECF No. 34-2,

---

ECF No. 34-5, PageID.1034.  In response, Ms. Lowe stated that she hoped Plaintiff feels better.  *Id.*

PageID.1018.  Moreover, Plaintiff's doctor's notes did not state that she required an accommodated work schedule.   ECF No. 32-8, PageID.861.   Under these circumstances, it is difficult to see how Defendants could perceive that Plaintiff suffered from an impairment that substantially limited a major life activity.  Even if Defendants properly recognized Plaintiff as a diabetic, they could not have regarded Plaintiff as disabled within the meaning of the PWDCRA.

In sum, the Court finds that Plaintiff has not presented sufficient evidence to establish that she was (1) actually disabled as defined under the PWDCRA, or (2) regarded as disabled under the PWDCRA at the time of Defendants' allegedly discriminatory actions.

### c.  Qualification for Position

Even if Plaintiff was able to satisfy the first element of a discrimination claim under the PWDCRA, her claim would still fail.  The Court finds that Plaintiff is also unable to satisfy the qualification element.  *Peden v. City of Detroit*, 680 N.W.2d 857, 864 (Mich. 2004).  "An employee is qualified if [she] was performing her job at a level that meets the employer's legitimate expectations."  *Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 69 (Mich. 1997).

Here, Plaintiff argues that "[w]ith the exception of [] two incidents, which occur at the very end of [her] employment, all evidence indicates that [she] was performing her job."  ECF No. 32, PageID.624.  The Court takes notice that Plaintiff

received a raise on January 11, 2018. *Id.* Deborah Edwards, Plaintiff's unit manager at the time, testified that she did not have any concerns about Plaintiff's behavior when she was reporting to her. ECF No. 32-2, PageID.660. She also described Plaintiff as a "pleasant and good worker," but proceeded to explain that she was not surprised when Plaintiff was terminated. *Id.*

Defendants contest Plaintiff's argument that she is qualified, asserting that Plaintiff was "coached and disciplined on multiple occasions." ECF No. 27, PageID.250. Defendants emphasize that Plaintiff neglected the care of her patients, was offensive to her patients, refused to follow policy and procedure, and altered the employee assignment sheet. ECF No. 27, PageID.250. Defendants argue Plaintiff's performance issues prevent Plaintiff from creating a genuine issue of material fact that she is qualified for her position. *Smith v. Walmart Corp.*, No. 240569, 2003 WL 22339166, at *2 (Mich. Ct. App. Oct. 14, 2003) (finding that plaintiff was unable to create a genuine issue of material fact that he was qualified for his position because he was counseled for his performance and "changing his work schedule without notification or approval from a supervisor"). Plaintiff argues that, unlike *Smith*, she received approval to change shifts and followed policy and procedure while doing so. ECF No. 32, PageID.625. However, as previously discussed, Plaintiff has not provided evidence that she completed a shift change form. *Id.* Moreover,

20

Defendants emphasized at the hearing that Plaintiff's deposition reveals she was aware of the procedures for a shift change. *See also* ECF No. 34-2, PageID.1003.

Plaintiff concedes that she was disciplined on multiple occasions. ECF No. 32, PageID.615. Plaintiff contends that Defendants' cited failures in patient care were fabricated by Defendant Trilogy to justify her termination. ECF No. 32, PageID.625. She emphasizes the absence of any written complaints or summaries of oral complaints from residents in her personal file; Plaintiff thus argues that Defendants should be precluded from relying on such evidence. *Id.* Plaintiff further argues that under the Bullard-Plawecki Employee Right to Know Act, MCL § 423.501 *et seq.*, Defendants are prevented from using information that was not, but should have been, included in the personnel record. *Id.*

The Court emphasizes once more that Plaintiff does not dispute that she was disciplined. Further, the Court denotes that the evidentiary record in this matter includes an employee counseling record form, detailing a failure to follow standards and policies and procedures; specifically, this form includes details of Plaintiff's failure to follow directions, including around residents. ECF No. 32-9, PageID.884. Plaintiff signed this form and did not deny that she entered the residents' room after she found out they were complaining about her; rather, she simply states she was "absolutely not told" not to enter the rooms. *Id.* at PageID.885. The Court ultimately finds MCL § 523.502 is inapplicable here.

In sum, the Court finds that Plaintiff's disciplinary issues undermine her ability to establish that she was qualified for her position. Plaintiff thus cannot satisfy the second requisite element of a discrimination claim under the PWDCRA.

Accordingly, the Court concludes that summary judgment in favor of Defendants on Plaintiff's discrimination claim is warranted.[5]

### 2. Retaliation Claim

#### a. Standard under the PWDCRA

The PWDCRA prohibits an employer from retaliating against an employee who has either opposed a violation of the act or asserted his rights under the act. MCL § 37.1602(a). Retaliation claims based on circumstantial evidence are governed by the *McDonnell Douglas* burden-shifting framework. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). To establish a prima facie case of unlawful retaliation under the PWDCRA, the plaintiff must establish (1) that she engaged in a protected activity; (2) that was known by the defendant; (3) that the defendant took an action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Bachman v. Swan Harbour Assoc.*, 653 N.W.2d 415, 435 (Mich. Ct. Ap. 2002) (citation and quotation marks omitted). "If the plaintiff establishes a prima facie case of retaliation, the

---

[5] At the hearing, Plaintiff emphasized that the gravamen of her Complaint is her retaliation claim.

burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action." *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997).   The plaintiff bears the burden of proving that the defendant's proffered reason for the adverse action was merely pretextual.   *Id.*   This burden is not onerous; rather it is one that is easily met.   *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Here, Plaintiff alleges that Defendants retaliated against her for engaging in protected activities in violation of the PWDCRA, Mich. Comp. Laws § 37.1602(a). Specifically, Plaintiff alleges that Defendants terminated her on April 2, 2018 in retaliation of her complaints, including [the Michigan Department of Civil Rights ("MDCR") and EEOC], regarding her discriminatory treatment.   ECF No. 32, PageID.608; *see also* ECF No. 1-1, PageID.16.

### b.  Protected Activity

In their present Motion, Defendants do not dispute whether Plaintiff was engaged in protected activity.   One way a plaintiff can demonstrate she was engaged in a protected activity is by (1) making a charge; (2) filing a complaint; or (3) testifying, assisting, or participating in an investigation, proceeding, or hearing under the PWDCRA.   *Bachman v. Swan Harbour Assoc.*, 653 N.W.2d 415, 437 (Mich. Ct. Ap. 2002).   Here, Plaintiff filed two claims with the MDCR and EEOC: one for failure to accommodate and for discrimination in violation of the ADA and

PWDCRA, which was filed in January 2018, and the other for retaliation, which was filed in April 2018.   ECF No. 32, PageID.608.   Plaintiff thus satisfies the first requisite element of a retaliation claim under the PWDCRA.

### c. Defendants' Knowledge of Plaintiff's Engagement in Protected Activity

Defendants argue that Plaintiff cannot show that the protected activity she engaged in was known by any person who made or participated in the decision to terminate her.   ECF No. 27, PageID.251.   This argument relates to the second element of a retaliation claim under the PWDCRA.

Director of Nursing Marcell Rust testified that she made the decision to terminate Plaintiff.   ECF No. 32, PageID.626.   Defendants argue that, because Plaintiff concedes that Ms. Rust was unaware of her EEOC charge(s), her retaliation claim fails.   ECF No. 37, PageID.1308.   In her deposition, Plaintiff was asked if she had "any evidence that [Ms. Rust] knew about [her] EEOC charge," to which she responded, "No."   ECF No. 28-1, PageID.286.   However, Plaintiff emphasizes that Defendants' Human Resources generalist, Colleen Hunter, was aware of the EEOC charges.   ECF No. 32, PageID.627.   Indeed, Ms. Hunter testified that she was aware that there was an investigation and a complaint filed with an investigation made by the MDCR into Plaintiff's termination.   ECF No. 34-14, PageID.1263.   Plaintiff also highlights that the EEOC listed Ms. Hunter as a point of contact.   *See* ECF No. 34-7.   The Court takes notice that Defendants received an email from the EEOC on

January 11, 2018, titled "Digital Notice of Charge of Discrimination." ECF No. 32-8, PageID.866.  The EEOC also sent a letter to Ms. Hunter on January 18, 2018.  *Id.*

The Court finds that there is a dispute of material fact as to whether Ms. Hunter provided input into Plaintiff's termination.  Ms. Rust testified that there were a "couple of other people involved in any decisions made vis-à-vis discipline, including termination."  ECF No. 34-6, PageID.1064.  Ms. Rust listed Ms. Hunter as someone involved in such decision making.  *Id.*  Defendants argue that Plaintiff's focus on Ms. Hunter's knowledge is "misplaced."  ECF No. 37, PageID.1308.  At the hearing, the parties again disputed whether a decision maker was aware of the protected activity at issue in this matter.

In sum, the Court finds that the record contains enough evidence to establish that questions of material fact exist regarding Defendants' knowledge of Plaintiff's engagement in protected activity.  Plaintiff thus satisfies the second requisite element of a retaliation claim under the PWDCRA.

### d.  Causal Connection

Defendants do not contest the third element of a relation claim under the PWDCRA.  They instead focus the remainder of their argument on Plaintiff's alleged failure to establish causation, the fourth requisite element of a retaliation claim.  *See* ECF No. 27, PageID.252.

A plaintiff demonstrates causation by demonstrating that the employer "took an adverse action because of the protected activity, not merely after the protected activity." *Carter v. Gen. Motors Corp.*, No. 281415, 2009 WL 562983, at *2 (Mich. Ct. App. Mar. 5, 1009). In the absence of direct evidence of the causal connection, a plaintiff can establish causation by showing temporal proximity between the employer's knowledge of the protected activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 517 (6th Cir. 2009). "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014).

Here, the alleged documented disciplinary violations took place after notice of the EEOC charge was given on January 11, 2018. Specifically, Defendants cite to an investigation of two patient concerns regarding Plaintiff on February 27, 2018. ECF No. 27, PageID.243. Defendants also cite to a final written warning on March 7, 2018. *Id.* Plaintiff was terminated shortly thereafter on April 2, 2018. *Id.* Because this adverse employment action occurred very close in time to Defendants' knowledge of the protected activity—approximately six weeks—the Court finds that

Plaintiff has presented enough evidence to demonstrate a causal connection. Plaintiff thus satisfies the fourth requisite element of a prima facie case of retaliation.

### e. Pretext

To reiterate, once "the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action." *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). The plaintiff bears the burden of proving that the defendant's proffered reason for the adverse action was merely pretextual. *Id.* The plaintiff can demonstrate that the stated reason for her termination was pretextual by proving: "(1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate [her discharge], or (3) that they were *insufficient* to motivate discharge." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (internal citation and quotation marks omitted) (emphasis in original). This test "need not be applied rigidly." *Id.* The Sixth Circuit has explained that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

As detailed in previous sections, Defendants explain that they terminated Plaintiff on the basis of patient complaints and alteration of the hallway schedule. ECF. No. 27, PageID.252–53. Plaintiff contests this reasoning, arguing that Defendants fabricated the patient complaints. ECF No. 32, PageID.630. Plaintiff

thus appears to argue the first prong as set forth by the Sixth Circuit: that Defendants' proffered reasons had no basis in fact. *Blizzard*, 698 F.3d at 285. Plaintiff submits her deposition testimony in support of her argument. ECF No. 32, PageID.630. There, Plaintiff testified that at least one of the nurses informed her that "she wrote something and she didn't want to and she didn't even sign her name." ECF No. 34-2, PageID.1001. Further, Plaintiff emphasizes that she denied all alleged misconduct at the time Defendants' disciplined her. ECF No. 32, PageID.631; *see also* ECF No. 34-6, PageID.1077. The Court finds that Plaintiff's testimony sufficiently casts doubt on the validity of Defendants' termination decision.

In sum, the Court concludes that issues of material fact remain as to whether Defendants' proffered reason for terminating Plaintiff's employment was pretextual. Accordingly, the Court will deny summary judgment on Plaintiff's retaliation claim.

## IV. DEFENDANTS' RENEWED MOTION TO COMPEL

### A. Legal Standard

Federal Rules of Civil Procedure 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed. R. Civ. P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). Under Rule 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Additionally, Rule 26(e)(1)(A) requires a plaintiff to supplement her responses in a timely manner.  If the receiving party fails to respond to interrogatories or requests for production, Rule 37 provides the party who sent the request the means to file a motion to compel.  Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

Furthermore, a party can seek sanctions against any party who disobeys a court's discovery order.  Fed. R. Civ. P. 37(b)(2).  Rule 37(b)(2) provides, in pertinent part:

> (b) Failure to Comply With a Court Order.
>
> ***
>
> (2) Sanctions Sought in the District Where the Action Is Pending
>
>> (A) *For Not Obeying a Discovery Order.*  If a party or a party's officer, director, or managing agent … fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>>
>> ***
>>
>>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>>>
>>> ***
>>>
>>> (v) dismissing the action or proceeding in whole or in part;
>>>
>>> ***

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> \*\*\*
>
> (C) *Payment of Expenses*.  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Rule 37's authorization of monetary sanctions is limited to expenses "caused by the failure to comply with discovery orders."  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 n.13 (6th Cir. 2002) (citation omitted).

## B. Analysis

While Defendants' Motion for Summary Judgment was pending, Defendants filed the instant Renewed Motion to Compel.  ECF No. 38.  Specifically, Defendants request that this Court enter an Order requiring Plaintiff to: (1) provide full and complete responses supplementing Plaintiff's incomplete responses to Defendants' First Set of Interrogatories and Document Request Nos. 1, 5, 7, 8, 10, and 16 from Defendant Trilogy's First Discovery Requests, without objections, within seven (7) days; (2) provide full and complete responses to Defendants' Second Set of Requests for Production of Documents, without objections, within seven (7) days; (3) pay Defendants' reasonable costs and attorney fees incurred in bringing the instant

Motion and Defendants' initial Motion to Compel (ECF No. 29); and (4) impose sanctions on Plaintiff for her defiance of this Court's prior discovery order. *Id.* at PageID.1352. In an Order from July 1, 2020, Magistrate Judge David R. Grand granted Defendants' first Motion to Compel, ordering Plaintiff to "provide full and complete supplemental responses to Defendant's First Set of Interrogatories and Document Request Nos. 1, 5, 7, 8, 10, and 16 from Defendant's First Discovery Requests" and to "provide full and complete responses to Defendant's Second Set of Requests for Production of Documents" by July 15, 2020. ECF No. 36, PageID.1299. Moreover, Magistrate Judge Grand warned Plaintiff that her failure to comply with the Order "may result in the imposition of an appropriate sanction, up to and including dismissal of her case." *Id.*

## 1. Outstanding Discovery Requests

In their Motion, Defendants assert that Plaintiff has failed to provide the court-ordered supplemental responses to either their (1) First Set of Interrogatories and Requests for Production of Documents ("First Discovery Requests"); or (2) Second Set of Requests for the Production of Documents ("Second Discovery Requests"). ECF No. 38, PageID.1344. In her Response, Plaintiff does not dispute that she failed to comply with her discovery obligations as ordered by Magistrate Judge Grand by July 15, 2020. ECF No. 39, PageID.1480. Plaintiff's counsel asserts that when he was notified of missing documents, he attempted, "at length," to satisfy Defendants'

counsel's demands.  *Id.* at PageID.1481.  Plaintiff's counsel admits that these attempts failed.  *Id.*

At the hearing, the parties agreed that Plaintiff has now complied with the Court's prior Order as it relates to Defendants' Second Discovery Requests. Defendants now move for the Court to require supplemental responses to their First Discovery Requests.  Accordingly, the Court will limit its analysis of Defendants' present Motion with this updated information.

Pursuant to Federal Rule of Civil Procedure 34(b)(2)(A), Plaintiff was required to provide supplemental responses Defendants' First Discovery Requests. On July 1, 2020, Magistrate Judge Grand ordered Plaintiff to provide "full and complete" supplemental responses to these requests.  As of the date of this writing, Plaintiff has failed to provide responses, or information on when her responses will be served, excluding handwritten notes, which were filed on August 26, 2020 (ECF No. 41).[6]

Plaintiff has consistently failed to meet her discovery obligations.  Plaintiff continues to avoid her obligation to provide full and complete responses to Defendants' discovery requests.  Pursuant to Rule 34(b)(2)(A), this Court orders

---

[6] Defendants emphasize that Plaintiff produced these documents "more than eight (8) months after they were initially requested, **forty-one (41) days** after Plaintiff was required to produce these records pursuant to the Court Order, (Dkt.#36), and not until after Defendants were forced to file two motions to compel."  ECF No. 42, PageID.1506 (emphasis in original) (footnote omitted).

Plaintiff, for the second time, to supplement and complete her initial responses to Request Nos. 1, 5, 7, 8, 10, and 16 from Defendant Trilogy's First Discovery Requests, without objections, within seven (7) days.

### 2. Defendants' Request for Costs and Attorney's Fees

Defendants request the Court award them reasonable costs and attorney fees incurred in bringing the instant Motion, as well as their first Motion to Compel. In his July 1, 2020 Order, Magistrate Judge Grand did not award attorney's fees or costs; however, he did warn Plaintiff that "her failure to comply with this Order or to discharge her other discovery obligations may result in the imposition of an appropriate sanction." ECF No. 36, PageID.1299. Plaintiff was given a clear deadline to provide full and complete responses to Defendants' discovery requests, yet, she failed to comply with this Order. Indeed, Plaintiff's counsel admits that formal responses were not provided by this required date. ECF No. 39, PageID.1480.

While the Court acknowledges Plaintiff's willingness to resolve any outstanding discovery disputes amicably, ECF No. 39, PageID.1481, the Court agrees with Defendants that Plaintiff was provided ample time to comply with this Court's Order, ECF No. 38, PageID.1349. Moreover, the Court finds that Plaintiff's admitted failure to comply with her discovery obligations is not substantially justified. Accordingly, pursuant to Rule 37(b)(2)(C), the Court will grant

Defendants' request for costs and attorney fees incurred in bringing the instant Renewed Motion to Compel and Defendants' initial Motion to Compel.

### 3. Defendants' Request for Sanctions

As mentioned in the preceding section, this Court's July 1, 2020 Order warned Plaintiff of appropriate sanctions, up to and including dismissal of her case, should she fail to satisfy her required discovery obligations. Defendants bring the instant Renewed Motion to Compel for Plaintiff's failure to comply with this Court's Order. Defendants thus request this Court to impose sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2)(A). ECF No. 38, PageID.1350. In her Response, Plaintiff argues Defendants' request amounts to "extraordinary relief[.]" ECF No. 39, PageID.1480–81.

In their Renewed Motion, Defendants request this Court impose the following sanctions: preclusion of documents; a show cause order; payment of attorneys' fees and costs; and any other sanctions this Court deems just and appropriate. ECF No. 38, PageID.1350–51. In light of Plaintiff's admitted failure to comply with this Court's discovery orders, and the parties' arguments at the hearing, this Court finds that sanctions, pursuant to Rule 37(b)(2)(A), on Plaintiff and her counsel, are appropriate. The Court emphasizes once more that Plaintiff and her counsel were on notice of this Court's readiness to impose appropriate sanctions. *See* ECF No. 36, PgeID.1299.

Accordingly, pursuant to Rule 37(b)(2)(A), this Court will require Plaintiff to pay an additional $500.00 for her willful defiance of the Court's July 1, 2020 Order.

## V. CONCLUSION AND ORDER

For the reasons discussed herein, it is **ORDERED** that Defendants' Motion for Summary Judgment [#29] is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** Defendants' Motion as to Plaintiff's discrimination claim. The Court **DENIES** Defendants' Motion as to Plaintiff's retaliation claim.

**IT IS FURTHER ORDERED** that Defendants' Renewed Motion to Compel Supplemental Responses to Defendants' First Set of Interrogatories and Requests for Production of Documents, Responses to Defendants' Second Set of Requests for Production of Documents [#38] is **GRANTED IN PART** as follows:

a. Plaintiff is ordered to provide full and complete supplemental responses to the First Set of Interrogatories and Document Request Nos. 1, 5, 7, 8, 10, and 16 from Defendant Trilogy's First Discovery Requests, without objections, within seven (7) days of this Order;

b. Plaintiff is ordered to pay Defendants' reasonable costs and attorneys' fees incurred in bringing their Renewed Motion to Compel and their First Motion to Compel; and

c. Plaintiff is ordered to pay an additional $500.00 for her willful defiance of the Court's July 1, 2020 Order.

**IT IS FURTHER ORDERED** that the Parties shall comply with the following amended scheduling order:

| YOU WILL RECEIVE NO FURTHER NOTICE OF THESE DATES | |
| --- | --- |
| Settlement Conference before Magistrate Judge David R. Grand | October/November 2020 |
| Motions *in Limine* due: | November 23, 2020 |
| Final Pretrial Order due: | November 23, 2020 |
| Final Pretrial Conference Date: | December 1, 2020 at 10:00 a.m. |
| Trial Date: | December 7, 2020 at 9:00 a.m. |

**IT IS SO ORDERED**.

Dated:          September 17, 2020

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 17, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager